EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* EUGENIO DEL TORO, acusado y apelante.

No. 2368.—*Visto:* Enero 22, 1925. *Resuelto:* Mayo 21, 1925.

DERECHO PENAL — APELACIÓN Y ERROR, Y *Certiorari* — RESOLUCIÓN Y DISPOSICIÓN DEL CASO—REVOCACIÓN DE SENTENCIA—SORPRESA.—Procede revocar la sentencia cuando, contra la protesta del acusado, la corte admite la declaración de un testigo cuyo nombre no figuraba en la acusación y cuya comparecencia fué una completa sorpresa para la defensa que no tuvo oportunidad para contrarrestar la imprevista discusión con que se confrontó en abierta violación de un convenio expreso de las partes con respecto a la prueba.

SENTENCIA de *Pablo Berga*, J. (Humacao), condenando al acusado por delito de adulteración de leche. *Revocada.*

*González Fagundo & González, Jr.,* abogados del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Una acusación formulada por el fiscal del distrito imputaba al apelante el hecho de tener en venta leche adulterada.

Un químico llamado Gadea, testigo del gobierno, declaró que la leche estaba bajo el *standard* de ley. Otro químico de la defensa manifestó que su análisis demostró que la muestra examinada por él estaba dentro de la ley.

El fiscal interrumpió el interrogatorio de este testigo haciendo a la corte la petición de que se dictara una orden para que fuera analizada una tercera muestra que estaba en poder del oficial local de sanidad. El abogado del acusado se allanó a esta petición a condición de que se permitiera

al químico que había declarado como testigo del acusado observar la prueba cuando se hiciera.

Entonces el fiscal solicitó permiso para volver a llamar a su testigo y seguir examinándolo, a lo que el acusado se opuso y la corte entonces manifestó "que el fiscal da por retirada la solicitud de que se examine la otra muestra."

A este más bien inesperado aviso siguió un recordatorio del abogado del acusado de que el fiscal lo había "propuesto," una resolución declarando sin lugar la "moción," y una discusión más o menos extensa y desagradable entre el abogado del acusado y la corte, al concluir la cual se permitió al acusado seguir adelante con el interrogatorio de su testigo.

El acusado al dar por terminado su caso, pidió que se dictara una orden para que fuera analizada la tercera muestra por los dos químicos que habían declarado en el juicio, en el sitio que la corte pudiera designar. El fiscal estuvo conforme con esta indicación y la corte se reservó la resolución.

Después se dice en los autos:

"Antes de ser sometido el caso a la consideración de la Corte, ésta resuelve la moción del acusado acerca del análisis de la tercera muestra que ha sido traída a la corte por el médico de sanidad del distrito, y que dicha muestra sea enviada al Laboratorio Insular y allí examinada de nuevo por el perito del Pueblo señor Gadea y el perito del acusado señor Pesquera, con la condición de que dicha muestra sea abierta en presencia de todos, tanto del perito del fiscal como del de la defensa, y la corte resolverá de acuerdo con el nuevo informe escrito que habrán de rendirle dichos peritos.

"A petición del abogado defensor el caso quedó cerrado, sin que se pudiera admitir ninguna otra evidencia que no fuera la declaración de los peritos que verificaron el examen de la tercera muestra."

En la vista subsiguiente después del análisis de la tercera muestra hecho por los dos químicos anteriormente referidos, un informe conjunto firmado por ambos fué ofrecido como prueba, en el cual estaban ellos de acuerdo en que el

resultado mostraba aproximadamente una mitad del uno por ciento menos de la proporción de grasa prescrita por la ley, pero que la muestra analizada contenía cierta cantidad de sólidos que no podían ser disueltos y por tanto no fué incluída en el presente análisis hecho.

Entonces ambos químicos volvieron a declarar haciendo conclusiones diametralmente opuestas con referencia a la influencia e importancia de los sólidos aglutinados como factor en el resultado.

Tal como estaba entonces el asunto, de habérsele dado al acusado el beneficio de la regla sobre duda razonable tenía derecho a una absolución a falta de algo que llevara al juez a inclinarse a que el perito del gobierno era más digno de crédito que el químico que declaró como testigo del acusado.

En este estado del procedimiento el fiscal presentó al director del laboratorio químico del Departamento de Sanidad Insular, químico de larga experiencia, de reputación establecida y reconocida competencia, que no había examinado ninguna de las muestras analizadas, cuyo nombre no constaba en la acusación y cuya comparecencia fué una completa sorpresa para la defensa pero que había estado presente en el salón de la corte y sin haberlo visto el acusado había oído las declaraciones de los dos peritos que acababan precisamente de levantarse de la silla de testigos.

A este testigo, a pesar de la fuerte protesta del acusado, se le permitió entonces examinar las manifestaciones contradictorias de los dos testigos que le precedieron, para sostener la teoría del perito del gobierno, y atacar las conclusiones a que llegó el testigo del acusado, con argumentos, exposición sabia de teorías científicas y citas amplias de textos por diferentes autores, citados como autoridad sobre la cuestión en debate.

Al terminar este incidente extraordinario y aparatoso, el abogado del acusado rehusó repreguntar a este testigo y el acusado fué declarado culpable del delito imputado.

La pena impuesta fué de dos días de cárcel y las costas,

lo que parece indicar que la corte inferior consideró la cuestión a lo sumo como una técnica más que una violación intencional de la ley; pero el acusado se opone aun a esta leve sentencia y estamos obligados a convenir que dentro de las circunstancias debió haber tenido él una oportunidad de buscar y presentar, si podía, otros peritos de prestigio semejante, si no igual para contrarrestar en cierto modo o por lo menos impugnar la imprevista pero completamente preparada discusión científica con la cual se confrontó al terminarse la segunda vista arriba indicada, en flagrante desatención y en abierta violación del convenio expreso de todas las partes interesadas de que tal vista sería limitada al informe escrito y prueba testifical si hubiera necesidad de los dos peritos que habían sido previamente llamados como testigos.

*Debe revocarse la sentencia apelada.*